UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMANDA ABEL,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-699
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 7) and the Commissioner's response in opposition (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed her application for DIB in January 2011, alleging disability

since August 27, 2010, due to depression, bipolar type 2, post-traumatic stress disorder (PTSD),

obsessive compulsive disorder (OCD), hypertension, a history of seizure, sleep apnea, and

migraine. The application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

George Gaffaney. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing. On September 13, 2012, the ALJ issued a decision denying plaintiff's DIB application.

Plaintiff's request for review by the Appeals Council was granted and on August 12, 2014, the

Appeals Council rendered a decision in which they amended the ALJ's residual functional

capacity (RFC) determination to include additional mental limitations.[1]   The Appeal Council's decision thus became the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A) (DIB).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

---

[1]The Appeals Council issued an earlier decision on January 13, 2014.   *See* Tr. 13-16.   The August 12, 2014 decision was issued upon the Appeals Council's consideration of additional evidence submitted by plaintiff. (Tr. 4, 8).

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four

steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 27, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: neuropathy, asthma, obesity, bipolar disorder, obsessive-compulsive disorder (OCD), and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.   The [plaintiff] has the residual functional capacity to perform a range of sedentary unskilled work, as defined in 20 CFR 404.1567(a). The [plaintiff]'s residual functional capacity is limited to lifting ten pounds occasionally and five pounds frequently.   The [plaintiff] can sit for six hours and stand for two hours in an eight-hour workday.   The [plaintiff] is limited to walking five hundred feet at one time.   Regarding nonexertional limitations, the [plaintiff] can only occasionally climb stairs, stoop, and balance.   The [plaintiff] cannot kneel, crouch, crawl, or climb ladders.   In terms of environmental limitations, the

3

[plaintiff] is limited to only occasional exposure to humidity and wetness. The [plaintiff] must avoid hazards (heights, moving parts, etc.).

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1976 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 27, 2010, through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr. 25-36) (footnotes omitted).

## C. The Appeals Council Decision

The Appeals Council granted plaintiff's request for review. On August 12, 2014, the Appeals Council issued its final decision, amending the RFC formulated by the ALJ to include the mental limitations discussed throughout the ALJ's opinion - that plaintiff is able to complete simple, routine unskilled tasks with only occasional changes in a routine work setting, and can have only occasional interaction with the public, coworkers, and supervisors. (Tr. 5-6). The

---

[2]Plaintiff's past relevant work was as a retail customer service representative, hotel reservationist, call center advocate, and pharmacy technician. (Tr. 35, 63-64).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of 438,000 national jobs at the sedentary exertion level such as hand sorter, bench assembler, and bench packer. (Tr. 36, 64-65).

Appeals Council found that in light of the ALJ's findings at Steps Two and Three of the

sequential evaluation process, his discussion of plaintiff's mental limitations in the narrative

section of his RFC determination, and their inclusion in his hypothetical questions to the VE, the

omission of mental functional limitations from the bolded RFC findings in the ALJ's decision

was a typographical error.   (Tr. 5).   The Appeals Council therefore included these limitations in

reformulating plaintiff's RFC and affirmed the ALJ's finding that, for the period from August 27,

2010, through the date of the decision, plaintiff was not disabled using Medical-Vocational Rule

202.28 in 20 CFR Subpart P, Appendix 2, as a framework for decision-making.   (*Id.*).

The Appeals Council made the following findings:

l. The [plaintiff] met the special earnings requirements of the Act on August 27, 2010, the date the [plaintiff] stated she became unable to work and continues to meet them through December 31, 2015.

The [plaintiff] has not engaged in substantial gainful activity since August 27, 2010.

2. The [plaintiff] has the following severe impairments: neuropathy, asthma, obesity, bipolar disorder, obsessive-compulsive disorder, and post-traumatic stress disorder but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix l.

3. The [plaintiff]'s combination of impairments results in the following limitations on her ability to perform sedentary unskilled work-related activities: the [plaintiff] can lift ten pounds occasionally and five pounds frequently, sit for six hours and stand for two hours in an eight-hour workday, walk five-hundred feet at one time, occasionally climb stairs or stoop or balance, never kneel or crouch or crawl or climb ladders, have occasional exposure to humidity and wetness, avoid hazards (heights, moving parts, etc.), can complete simple, routine unskilled tasks with only occasional changes in a routine work setting, and can have only occasional interaction with the public, coworkers, and supervisors.

4. The [plaintiff]'s subjective complaints are not fully credible for the reasons identified in the body of this decision.

5

5. The [plaintiff] cannot perform her past relevant work for the reasons set forth in the Administrative Law Judge's hearing decision.

6. The [plaintiff] was 34 years old as of the alleged onset date, August 27, 2010, which is defined as a younger individual under our rules, and the [plaintiff] has a high school education and can speak English.

7. The transferability of the [plaintiff]'s job skills is not material because using the Medical Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not [plaintiff] has transferable job skills.

8. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] could perform. Using section 202.28 of 20 CFR Part 404, Subpart P, Appendix 2, as a framework for decision-making, the [plaintiff] is not disabled from the alleged onset date of August 27, 2010, through the date of the hearing decision, September 13, 2012.

9. The [plaintiff] is not disabled as defined in the Social Security Act at any time from the alleged onset date, August 27, 2010, through September 13, 2012, the date of the Administrative Law Judge's hearing decision.

(Tr. 6-7). The Appeals Council noted that in reaching its decision, it adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administrative Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." (Tr. 4).

### D. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ and the Appeals Council are supported by substantial evidence, and (2) whether the ALJ and the Appeals Council applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ and the Appeals Council applied the

correct legal standards in the disability determination.   Even if substantial evidence supports the

the conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be

upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651

(quoting *Bowen*, 478 F.3d at 746).   *See also Wilson*, 378 F.3d at 545-46 (reversal required even

though the Commissioner's decision was otherwise supported by substantial evidence where the

ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby

violating the agency's own regulations).

### E.  Specific Errors

Plaintiff raises five assignments of error on appeal.   Plaintiff's first assignment of error

regards the purported confusion caused by the Commissioner's answer to plaintiff's complaint.

Second, plaintiff argues the RFC formulated by the Appeals Council fails to accommodate

supported limitations resulting from her mental impairments.   Third, plaintiff asserts the RFC

formulated by the ALJ and adopted by the Appeals Council fails to adequately accommodate her

physical functional limitations, namely, her inability to engage in prolonged sitting. Fourth,
plaintiff argues the ALJ and Appeals Council erred at Step Five of the sequential evaluation
process because the hypothetical questions presented to the VE at the ALJ hearing do not
accurately portray plaintiff's limitations. Fifth, plaintiff contends the ALJ and Appeals Council
erred in assessing her credibility.

      1. The Appeals Council Decision is the "Final Decision" of the Commissioner.

      As detailed above, the Appeals Council granted plaintiff's request for review of the ALJ's
decision and issued a final decision on August 12, 2014. (Tr. 4-8). However, in her answer to
plaintiff's complaint, the Commissioner pleaded that the ALJ's September 13, 2012 decision was
the "final decision" of the Commissioner. *See* Doc. 3, ¶ 3. Plaintiff appears to argue that the
Commissioner should be bound by its pleading and that this matter should be remanded because
the ALJ's 2012 decision fails to accommodate plaintiff's established mental limitations. (Doc. 7
at 3-4). The Commissioner responds that the responsive pleading "may not have been
technically correct" but opposes remanding this matter on a technicality. (Doc. 12 at 5 n.2).
The Commissioner affirms that the Appeals Council's August 12, 2014 decision is the
Commissioner's "final decision" in this matter. (*Id*.).

      To the extent any confusion was caused by the Commissioner's responsive pleading, the
undersigned finds that the response in opposition to plaintiff's Statement of Errors clarifies that
the "final decision" of the Commissioner is the Appeals Council's August 2014 decision and not
the ALJ's September 2012 decision. The Court declines to adopt plaintiff's request to bind the
Commissioner by the erroneous statement in her responsive pleading and remand this matter
based solely on a misstatement that the Commissioner has since clarified. This approach would

8

result in an unnecessary delay in resolving the merits of plaintiff's substantive claims to address a procedural error that is easily remedied by allowing the Commissioner to amend her answer. In addition, there is no need to remand this matter as plaintiff based her Statement of Errors on the Appeals Council's 2014 decision. *See* Doc. 7 at 4 (plaintiff's assignments of error were asserted under the assumption that "the Appeals Council's 2014 decision is the 'final decision' in this matter. . . ."). Moreover, it is the practice of courts in this Circuit to correct simple procedural and typographical errors where relevant, rather than construe them against the offending party. *See, e.g., Ramirez v. Comm'r of Soc. Sec.*, No. 10-cv-12042, 2011 WL 3359689, at *1 n.1 (E.D. Mich. May 10, 2011); *Smith v. Astrue*, No. 1:09-cv-2130, 2011 WL 10433742, at *9 n.4 (N.D. Ohio Mar. 18, 2011). As the undersigned was able to engage in a meaningful review of the ALJ and Appeals Council's substantive decisions despite the purported confusion noted by plaintiff, any error committed by the Commissioner in the answer to plaintiff's complaint was harmless and does not warrant a remand of this matter.

Accordingly, plaintiff's first assignment of error should be overruled.

2. The Appeals Council's RFC adequately accommodates plaintiff's mental impairments.

For her second assignment of error, plaintiff argues that the Appeals Council's RFC formulation lacks substantial support because it does not accommodate all of her established mental functional limitations. (Doc. 7 at 4-10). Plaintiff asserts that the medical evidence of record demonstrates that she suffers from PTSD as a result of traumatic experiences during her teenage years. (*Id.* at 4, citing Tr. 1069). Plaintiff maintains that her PTSD and other mental impairments are responsible for her history of on-the-job difficulties, such as throwing a stapler at a supervisor, being rude to customers, not being able to hold a job longer than two years, and

9

missing four to five days of work monthly. (*Id.*, citing Tr. 56, 679, 1068). Plaintiff alleges that her subjective reports and the third person reports of her mother-in-law establish that plaintiff suffers from difficulties with concentration and focus, an inability and lack of motivation to complete tasks, excessive sleeping, and personality conflicts with other employees, which are not accommodated by the Appeals Council's RFC formulation. (*Id.* at 5, citing Tr. 244-45, 253, 279, 283, 300-01). Plaintiff argues that these reports should be fully credited because the state agency reviewing psychologists found her psychological allegations credible. (*Id.*, citing Tr. 94).

Plaintiff also challenges the ALJ's reliance on her medical records in support of his decision denying benefits. (*Id.* at 5-6). Plaintiff maintains that while the ALJ cited to her Veterans Affairs (VA) records and psychological treatment records to support his decision, this evidence supports a finding of disability as it demonstrates that plaintiff's depression causes sad, angry, and anxious moods, mood swings, and outbursts, which affect her ability to work. (*Id.*, citing Tr. 1122, 1156, 1171, 2422, 2428).

In addition, plaintiff argues that the ALJ and the Appeals Council erred by not crediting the functional assessment of her social worker, Amy Thomas, LCSW, LISW, as Ms. Thomas found plaintiff suffered from marked limitations that would preclude her ability to perform substantial gainful activity. (*Id.* at 6, 8, citing Tr. 2430-32). Plaintiff similarly contends the ALJ and Appeals Council erred by not accounting for the limitations found by the consultative examining psychologist, George Lester, Psy.D. (*Id.*, citing Tr. 1258, 1260). Plaintiff also argues the ALJ erred by not fully crediting her subjective reports of disabling limitations because one of the state agency reviewing psychologists found that her psychological allegations were

10

credible.   Lastly, plaintiff asserts the ALJ and Appeals Council erred by relying on evidence of

her activities of daily living and caretaking of her mother in support of their non-disability

finding.[4, 5]   (*Id.* at 8-9, citing Tr. 33, 94).

        The following is a summary of the pertinent medical evidence related to plaintiff's mental

impairments.   In April 2009, plaintiff was hospitalized for a suicide attempt after taking an

overdose of Effexor, Depakote and Seroquel.   Plaintiff reported a history of traumatic abuse

during her teenage years and that she had not been on psychiatric medication for over a year.

Plaintiff was started on a low dose of Lithium after she reported that it historically helped with

her mood swings and impulsivity.   Plaintiff was diagnosed with "bipolar I, most recent episode

depressed," and a personality disorder with borderline features and she was discharged with

directions to get aftercare treatment.   (Tr. 373-75).

        In May 2009, plaintiff was seen for follow-up care at the Veteran's Administration

("VA") Hospital in Dublin, Georgia, where she was staying with her parents.   (Tr. 658-727).

Psychotherapy notes document that plaintiff was engaging in "picking" and had scabs all over her

body; she attributed this behavior to her OCD.   (Tr. 679).   Plaintiff denied current suicidal

thinking and reported that she was moving back to Cincinnati, Ohio   (Tr. 679, 682).   Plaintiff

exhibited significant signs of anxiety leading up to her return to Cincinnati and the VA

psychologist urged plaintiff to be diligent about taking her medications.   (Tr. 688).   Plaintiff

_____

        [4]The portions of plaintiff's RFC assignment of error relating to the ALJ's credibility assessment are
addressed below in connection with plaintiff's fifth assignment of error.
        [5]Plaintiff also contends the ALJ erred by not questioning the VE at the ALJ hearing about the moderate
limitations found by the state agency reviewing psychologist in maintaining attention and concentration, dealing with
others, handling criticism on the job, and in persistence and pace.   (*Id.* at 7, citing Tr. 93, 97-98).   This argument is
addressed below in connection with plaintiff's fourth assignment of error which relates to the vocational evidence
relied on by the ALJ.

was diagnosed with major depression and borderline personality disorder and was treated with Citalopram and Temazepam. (Tr. 682-83, 726).

Upon her return to Cincinnati, plaintiff began treating with psychiatrist Susan Kuschnir, M.D. (Tr. 956-58). Plaintiff treated with Dr. Kuschnir twice a week for psychodynamic talk therapy. (Tr. 955).[6]

Plaintiff also received mental health treatment from the VA in Cincinnati. In October, 2010, when seen for a mental health summary update, plaintiff reported she was depressed, felt tired most of the time, had concentration problems, and was experiencing frequent nightmares and flashbacks of traumatic experiences. (Tr. 1069). She was diagnosed with bipolar disorder, PTSD, and a history of OCD, and scheduled to see psychiatrist Tamara M. Campbell, M.D. (Tr. 1071).

October 2010 treatment notes reflect that plaintiff was sad and anxious with pressured speech, but with no suicidal ideation. (Tr. 1171). Dr. Campbell directed plaintiff to take Abilify and Citalopram daily and contact the clinic if her depression worsened. (*Id.*). In December 2010, plaintiff reported increasing anxiety and sadness due to familial custody issues, but no suicidal ideation was documented. (Tr. 1153). Dr. Campbell's clinical observations include her findings that plaintiff was sad with a congruent affect, but she had good judgment and insight. (Tr. 1156). In January 2011, plaintiff reported improved mood with Abilify, but she was still having difficulty sleeping; Dr. Campbell observed plaintiff as having fair insight and judgment, "okay" mood, and a full range of affect; and Prazosin was continued to help with

---

[6]Plaintiff does not cite to or rely on treatment records from Dr. Kuschnir in her Statement of Errors. The above cited evidence from Dr. Kuschnir's treatment was submitted as part of the record maintained by plaintiff's primary care physician; the Court's review of the transcript did not reveal any further treatment records. Accordingly, plaintiff's treatment records with Dr. Kuschnir are not included in the instant summary.

plaintiff's "sleep/nightmares." (Tr. 1134-35). In March 2011, plaintiff reported to Dr. Campbell that she had lost custody of her children and that her husband felt she was more irritable and less focused since stopping medication.[7] (Tr. 1121). Dr. Campbell observed that plaintiff was sad and angry with some questionable paranoia, but she had full range of affect and linear thought processes. (Tr. 1122). Plaintiff was restarted on her medication. (Tr. 1121-22). In April 2011, plaintiff reported having a manic episode and Dr. Campbell noted that plaintiff was sad and angry with a restricted affect. (Tr. 1298-99). In June 2011, plaintiff was observed as having an anxious mood and restricted affect and she reported that she was in recovery from undergoing a total hysterectomy the week prior. (Tr. 1285). On August 1, 2011, plaintiff reported to Dr. Campbell that she did not take Estradiol since her mood stabilized before she needed it. (Tr. 1280). Plaintiff also told Dr. Campbell that she decided to pursue disability since she can only maintain stable employment for one year at the most then her mental health issues prevail. (Id.). Dr. Campbell found plaintiff to be cooperative, with good eye contact, sad mood, restricted affect, fair insight and judgment, and without suicidal ideation. (Tr. 1280-81). Plaintiff reported that she discontinued taking Prazosin because she was no longer having nightmares. (Tr. 1281). In October 2011, plaintiff reported she had a positive vacation with her husband. (Tr. 2528). Dr. Campbell found plaintiff's speech was normal, her mood was better and she had a full range affect; plaintiff was discontinued from Citalopram and Abilify and started on Sertraline. (Tr. 2528-29). In December 2011, plaintiff reported increased stress and stated she could not handle "all of her children." (Tr. 2522). Dr. Campbell noted that plaintiff previously reported that she

---

[7]Plaintiff reported on February 17, 2011, that she discontinued Abilify and Citalopram because she was becoming "progressively meaner. . . ." (Tr. 1200).

was capable of handling her children when she was fighting for custody and that these records would be available to Social Security staff to review. (*Id.*). May 2012 treatment notes reflect that plaintiff was caring for her mother, recently diagnosed with colon cancer, in Georgia for the past month. (Tr. 2518). Dr. Campbell found plaintiff to have a sad mood, restricted affect, and fair insight and judgment, with no suicidal ideation. (Tr. 2519).

On February 22, 2012, plaintiff began treating with a social worker, Ms. Thomas, at Positive Pathways. (Tr. 2424-28). Plaintiff reported that her bipolar symptoms (sleep disturbance, agitation, excessive cleaning, low motivation, fatigue, irritability, and tearfulness) were becoming unmanageable and interfering with her functioning. (Tr. 2424). Ms. Thomas diagnosed plaintiff with an anxiety disorder and rule out bipolar and borderline personality disorder. (Tr. 2428). March 2012 treatment notes include plaintiff's reports that her sleep increased and she felt anxious and guilty about her productivity; she had increased irritability, mood swings, and outbursts; and she felt overwhelmed and stressed around her family. (Tr. 2421-23). Plaintiff reported on March 21, 2012 that she felt "ok" but was worried about her mother's health. (Tr. 2420). In May 2012, plaintiff reported discord with her husband over her recent trip to take care of her mother in Georgia and with her psychiatrist regarding plaintiff's inconsistency with medication. (Tr. 2418-19). Ms. Thomas consistently found plaintiff to be cooperative, with logical thought process, and no suicidal ideation. (Tr. 2417-23).

On May 16, 2012, Ms. Thomas completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form. (Tr. 2430-32). Ms. Thomas opined that plaintiff had marked limitations in her activities of daily living and in maintaining social functioning. (Tr. 2430). Ms. Thomas further opined that plaintiff had frequent deficiencies in concentration,

14

persistence or pace resulting in failure to complete tasks in a timely manner and repeated

episodes of decompensation under stress in work or work-like settings. (*Id*.). Ms. Thomas

found that plaintiff also had marked limitations in: her ability to function outside her own home

and maintain occupational functioning; memory; insight; and judgment for ordinary activities.

(Tr. 2431). Ms. Thomas noted that plaintiff had not provided much detail about specific work

stressors or functioning as the primary focus of treatment "has been in family system, managing

symptoms." (*Id*.).

In April 2011, consultative examining psychologist Dr. Lester evaluated plaintiff for

disability purposes. (Tr. 1255-61). Plaintiff reported she was seeking disability due to "mental

health issues" and did not feel she was able to work because "I have mood swings that interfere

with my ability to stay on tasks." (Tr. 1255). As for her daily activities, plaintiff reported that

she attempts to make sure she gets at least one chore done daily, and that she vacuums, dusts, and

does laundry. (Tr. 1257). Plaintiff stated that she goes to church with her husband, spends time

on the computer, and does limited socializing because she sometimes takes "things the wrong

way." (*Id*.). Plaintiff also stated that she finds it difficult to focus for long periods of time and

often needs reminders to make sure she takes her medications. (*Id*.).

Dr. Lester noted that during the mental status examination, plaintiff smiled occasionally,

had good eye contact, showed no signs of anxiety, was polite and cooperative, was open and

friendly, and responded to questions in a careful, thoughtful, and conscientious manner. (Tr.

1257). Dr. Lester also noted that plaintiff's responses to questions were relevant, coherent, well

organized, and goal directed; she displayed a normally broad affect; she showed no tearfulness,

hypomania, or signs of emotional distress; and she showed no motor tremor, startle reactions,

15

restlessness, or other signs of anxiety.  (*Id.*).   Dr. Lester noted plaintiff exhibited no

ruminations, obsessions, delusions, or other unusual mental content; she denied suicidal feelings;

she was alert and oriented to person, place, and time; and her responses to questions to assess her

reasoning and judgment were adequate.  (Tr. 1258-59).    Plaintiff reported that she was tired

and fatigued, had trouble concentrating over 15 minutes, and had crying spells.  (Tr. 1258).

Plaintiff was unable to focus well enough to complete a serial seven subtraction task from 100

but was able to complete a serial three subtraction task from 30.  (Tr. 1258-59).   She did

remember four of five objects after five minutes.  (Tr. 1258).   Dr. Lester assessed plaintiff with

Bipolar II Disorder, OCD in partial remission, and PTSD in partial remission.  (Tr. 1259).

    Dr. Lester found that plaintiff had no difficulty carrying out instructions during the

interview, though her ability to complete concentration and immediate memory tasks was

somewhat weak though not impaired, and she appeared to have the intelligence to perform

simple and some multi-step tasks.  (Tr. 1260).   Dr. Lester reported that plaintiff had no

difficulties relating to him or his staff, her prognosis was fair, and she had improved in some of

her symptoms, although she continued to display some mood fluctuation that likely was chronic

and would require ongoing treatment.  (Tr. 1260-61).

    State agency psychologist, Dr. Paul Tangeman, Ph.D., reviewed the record on May 4,

2011, and determined that plaintiff had mild restrictions in her activities of daily living; mild

difficulties in maintaining social functioning; moderate difficulties in maintaining concentration,

persistence or pace; and no episodes of decompensation of extended duration.  (Tr. 74).   Dr.

Tangeman gave "great" weight to Dr. Lester's opinion, finding that his statements were

consistent with the medical evidence of record in the file.  (Tr. 75).   Dr. Tangeman concluded

16

that plaintiff is "capable of performing simple to mildly complex tasks that do not require

frequent changes in the job tasks and no more than superficial interactions with others." (Tr. 78).

Dr. David Demuth, Ph.D., a state agency psychologist, reviewed the record in August 2011 upon

reconsideration and affirmed Dr. Tangeman's opinion. (Tr. 93). Dr. Demuth found that

plaintiff's "psychological allegation is credible." (Tr. 94). In consideration of plaintiff's

sustained concentration and persistence and reduced concentration, Dr. Demuth opined that

plaintiff retained the ability to do one to four step tasks and some multi step tasks; carry out tasks

in situations where duties were relatively static and changes could be explained; and do tasks that

did not require independent prioritization or more than daily planning. (Tr. 98). Dr. Demuth

further opined that plaintiff had a moderately reduced ability to interact with the public and

would work best in small groups or alone, and she could sustain tasks as long as they involved

only occasional and superficial interactions with others. (*Id.*). Dr. Demuth determined that

plaintiff could not work in situations where she needed to resolve conflicts or maintain a friendly

and persuasive demeanor, and that she had a reduced ability to respond appropriately to change.

(*Id.*).

      The ALJ found that plaintiff's bipolar disorder, PTSD, and OCD were severe

impairments. (Tr. 26). The ALJ further found that plaintiff had mild restriction in activities of

daily living; moderate difficulties in social functioning; and moderate difficulties in

concentration, persistence or pace. (Tr. 28). The ALJ gave "great weight" to the opinion of Dr.

Lester[8] and "significant weight" to the opinions of Drs. Tangeman and Demuth[9] and concluded

---

[8]The ALJ explained that this opinion was deserving of "great weight" given the doctor's "convincing rationale and the thoroughness of his opinion. In addition, it is consistent with the clinical examination findings, reported activities of daily living, and additional opinion evidence." (Tr. 34).
    [9]The ALJ found that the state agency reviewing psychologists' opinions were entitled to "significant

that "the opinion evidence supports the proposition that [plaintiff] is able to complete simple, routine unskilled tasks with only an occasional change in routine work setting and only occasional interaction with the public, coworkers, and supervisors." (Tr. 34). However, the ALJ erroneously omitted these limitations from the bolded RFC portion of his opinion (Tr. 28-29), which prompted the Appeals Council to grant plaintiff's reconsideration request and to reformulate the RFC to include these limitations as reflected in its August 12, 2014 decision. (Tr. 6).

For the following reasons, the undersigned finds that the RFC formulated by the Appeals Council sufficiently accommodates plaintiff's established limitations resulting from her mental impairments. First, the record does not support plaintiff's assertion that her PTSD causes additional limitations not accounted for by the Appeals Council's RFC. Plaintiff argues that her PTSD caused her problems with work in the past, such as losing a job for throwing a stapler at her supervisor, being incapable of holding a job beyond two years, and missing work up to five times a month. *See* Doc. 7 at 4-5. The record indicates, however, that plaintiff's outburst at work was an isolated incident that occurred while she was arguing with her ex-husband's divorce attorney. *See* Tr. 679 ("When [plaintiff's ex-husband's] attorney called her at work . . . she 'got loud'; when [her] boss came to quiet her, [plaintiff] threw a stapler at her, losing the job."). Aside from this isolated incident, there is no evidence in the record of plaintiff having similar outbursts at work or in a public setting. Indeed, all of the medical professionals who have treated or examined plaintiff repeatedly noted that she was cooperative and pleasant. *See*, *e.g.*,

---

weight" because "the[ir] analysis cogently and convincingly summarized the issues in this case appropriately and based upon that applied a reasonable opinion. In addition, the opinions are consistent with the clinical examination findings and the [plaintiff]'s activities of daily living." (Tr. 34).

Tr. 1257, 1280-81, 2417-23. This evidence simply does not support plaintiff's position that she suffers from PTSD-related outbursts that preclude her ability to work. The only evidence plaintiff cites in support of this allegation is her own testimony and subjective reports. *See* Doc. 7 at 5, citing Tr. 48, 56, 244-45, 253, 279, 283. As explained further *infra*, however, the ALJ's decision to not fully credit plaintiff's subjective reports is substantially supported by the evidence of record and, thus, the ALJ and the Appeals Council were not required to accommodate plaintiff's unsubstantiated limitations. In addition, to the extent plaintiff maintains her subjective reports should have been fully credited because Dr. Demuth found her psychological allegation to be credible, *see id.*, citing Tr. 94, plaintiff ignores that: (1) the evidence from Dr. Demuth reflects that he found plaintiff's statements to be only "partially credible" (Tr. 94); (2) Dr. Demuth ultimately opined that plaintiff was capable of performing work with the limitations set forth in the Appeals Council RFC (Tr. 98); and (3) the ALJ's credibility finding is entitled to deference because he, unlike Dr. Demuth, had the "unique opportunity" to personally observe and question plaintiff. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted).

Second, the ALJ's decision accurately characterizes plaintiff's VA treatment notes. Plaintiff appears to argue the ALJ erred in citing to this evidence in his decision denying benefits because (1) these records establish that plaintiff consistently presented with a sad and angry mood, and (2) the ALJ failed to provide specific page citations in his opinion. *See* Doc. 7 at 5-6. Plaintiff's arguments are not well-taken. The ALJ accurately noted that this evidence reflected plaintiff's reports of "difficulty sleeping with nightmares, flashbacks, decreased interests, increased guilt, and fatigue," as well as clinical observations that plaintiff presented with a sad or

19

anxious mood and restricted affect. *See* Tr. 30-31, citing Tr. 1032-1253. The ALJ cited to this
and other evidence of record showing that plaintiff suffered from, *inter alia*, stress, anxiety,
mood swings, and occasional emotional outbursts in support of his finding that plaintiff suffered
from "significant [mental] impairments." (Tr. 31). Nevertheless, the ALJ reasonably
determined that "the record is devoid of material support [for plaintiff]'s allegations with respect
to the *pervasiveness and severity* of the impairments." (Tr. 31) (emphasis added). The medical
source opinion evidence of record, discussed above, substantially supports the ALJ's
determination that plaintiff retains the ability to perform work despite the limitations caused by
her mental impairments. Moreover, plaintiff does not cite to any regulation or rule that requires
an ALJ to provide pinpoint page citations. All that is required is that the ALJ and Appeals
Council's decisions be capable of meaningful judicial review. *See Godbey v. Colvin*, No.
1:13-cv-167, 2014 Wl 4437647, at \*9 (W.D. Ky. Sept. 9, 2014) (citing *Wilson v. Comm'r of Soc.
Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Here, the undersigned was readily able to review the
ALJ's decision despite his broad references to the medical evidence and, consequently, the ALJ
did not err in this regard.

Third, to the extent plaintiff maintains the ALJ erred by not discussing Dr. Demuth's
responses to every question set out in the Disability Determination Explanation forms, *see* Doc. 7
at 7, citing Tr. 97-98, the Court disagrees. These forms explicitly provide that the questions set
out "help determine the individual's ability to perform sustained work activities. However, *the
actual mental residual functional capacity assessment* is recorded in the *narrative discussion(s)*
in the explanation text boxes." (Tr. 97) (emphasis added). Thus, the ALJ did not err by failing

to discuss Dr. Demuth's responses to each individual question where the Appeals Council incorporated the doctor's "actual" RFC assessment in its RFC formulation.[10]

Likewise, the ALJ and Appeals Council did not err by failing to include similar findings from Dr. Lester in plaintiff's RFC. Plaintiff maintains the Appeals Council's RFC formulation lacks substantial support because it adopted the ALJ's decision to give "great weight" to Dr. Lester's findings, but the Appeals Council did not account for all of his findings in formulating plaintiff's RFC. (Doc. 7 at 7). Plaintiff argues the RFC should include additional limitations because "Dr. Lester . . . noted fatigue and crying spells and being quick to be agitated. He concluded that [plaintiff's] ability to carry out instructions may depend on her mood, and being distracted after 10-15 minutes would affect her persistence and pace to sustain work." (*Id.*, citing Tr. 1258, 1260). The specific portions of the opinion plaintiff cites as being improperly omitted from the RFC formulation relate entirely to her subjective reports to Dr. Lester. Dr. Lester did not observe that plaintiff was tired, fatigued, or having crying spells; rather, he documented plaintiff's subjective reports of feeling "tired, fatigued" and having "crying spells" and "difficulties concentrating after about 10 or 15 minutes on a specific task." (Tr. 1258). In contrast, Dr. Lester *observed* that plaintiff had "no difficulties carrying out interview instructions or mental status examination instructions." (Tr. 1260). Dr. Lester further determined that despite plaintiff's reports of distraction, her performance at the consultative examination indicated that she was capable of performing simple and some multi-step tasks. (*Id.*). The Appeals Council accounted for these findings by formulating an RFC that limited plaintiff to

---

[10]Notably, plaintiff does not explain how the ALJ's discussion of these responses would alter her RFC formulation given the state agency psychologist's narrative explanation of plaintiff's limitations, which the ALJ and Appeals Council adopted in full.

"simple, routine unskilled tasks" (Tr. 6), which is notably a more restrictive RFC than Dr. Lester assessed.

Fourth, the record does not support plaintiff's assertion that the ALJ and Appeals Council "erred on" the objective findings.   (Doc. 7 at 8).   Plaintiff references her sad mood and anxiety[11] in the treatment notes and Dr. Lester's examination results showing that plaintiff "was unable to focus well enough to complete a Serial 7 Task Backward from 100" and retained "four of five objects after five minutes."   (*Id.*, citing Tr. 1258).   However, plaintiff fails to explain how this evidence warrants a more restrictive RFC than the one formulated by the Appeals Council. Contrary to plaintiff's apparent assertion that her ability to recall four of five objects indicates deficiencies in concentration, this evidence reasonably supports the Appeals Council's determination that plaintiff can perform simple tasks.   Moreover, plaintiff omits Dr. Lester's finding that although she could not perform the Serial 7 Task, she was "able to complete a Serial 3 Task Backward from 30" (Tr. 1258-59), which further supports the Appeals Council's RFC formulation.

Lastly, the ALJ appropriately considered the evidence from Ms. Thomas, plaintiff's treating social worker.   Plaintiff argues the ALJ erred by not giving "significant weight" to Ms. Thomas' opinion because she found many of the same limitations found by Dr. Lester, albeit Ms. Thomas opined plaintiff suffered from these limitations to a greater degree than Dr. Lester opined.   (Doc. 8 at 8).   Plaintiff asserts that the ALJ and Appeals Council erred by not adopting the marked limitations found by Ms. Thomas.   (*Id.*).

---

[11]Plaintiff does not provide specific page citations to the evidence referenced.

As detailed above, plaintiff began treating with Ms. Thomas in February 2012. In May 2012, Ms. Thomas assessed plaintiff's functional capacity and opined that plaintiff's mental impairments caused marked functional limitations that would preclude her ability to work. *See* Tr. 2416-32. The ALJ considered Ms. Thomas' opinion given her status as a treating "other source" and recognized the relevance of her opinion as a treating professional. (Tr. 34). Nevertheless, the ALJ determined that her opinion provided "little evidentiary value" and was not entitled to "significant weight" because it "failed to provide any justification or rationale for the repeated marked limitations to which she opined" and "does nothing to provide substantive reasoning or analysis in support of [plaintiff]'s subjective complaints." (Tr. 34-35). The ALJ further noted that Ms. Thomas' opinion was inconsistent with her own treatment notes and clinical findings, and Dr. Lester's opinion. (Tr. 35).

The ALJ appropriately considered Ms. Thomas' opinion as required by 20 C.F.R. § 404.1513(d) and substantial evidence supports his determination that it was not entitled to significant weight. For example, Ms. Thomas opined that plaintiff was markedly limited in her activities of daily living, in maintaining social functioning, and in concentration, persistence and pace, but when asked she failed to include findings that supported these conclusions. *See* Tr. 2430-31. Given Ms. Thomas' failure to provide any explanation in support of her extreme findings, it was reasonable for the ALJ to give less weight to her opinion. The ALJ's conclusion that Ms. Thomas' opinion was inconsistent with her treatment records is also substantially supported. While Ms. Thomas opined that plaintiff was seriously limited in her insight and judgment (Tr. 2431) and had marked limitation in social functioning (Tr. 2430), the treatment notes consistently document that plaintiff was cooperative and had logical thought processes (Tr.

2417-23). In addition, the narrative sections of her treatment notes do not include observations
of serious mental health symptoms that would support Ms. Thomas' findings of marked
limitations. *See*, *e.g.*, Tr. 2417 (Ms. Thomas processed with plaintiff the concept of
self-sabotage in relation to her failure to regularly take her medications); Tr. 2419 (plaintiff
discussed her tendency to overreact and the meaning of taking on a caretaking role); Tr. 2421
(plaintiff reported feeling overwhelmed by her relationship with her mother-in-law and discussed
how to navigate interfamilial matters). The ALJ reasonably determined that Ms. Thomas'
progress notes do not support the marked limitations she assessed.

Moreover, the ALJ was not required to give any special credence to Ms. Thomas' opinion
as social workers are not "acceptable medicals sources." Only "acceptable medical sources" as
defined under 20 C.F.R. § 404.1513(a) can provide evidence which establishes the existence of a
medically determinable impairment, give medical opinions, and be considered treating sources
whose medical opinions may be entitled to controlling weight. Soc. Sec. Ruling (SSR)
06-03p.[12] Although information from "other sources" cannot establish the existence of a
medically determinable impairment, the information "may provide insight into the severity of the
impairment(s) and how it affects the individual's ability to function." *Id.* Factors to be
considered in evaluating opinions from "other sources" who have seen the claimant in their
professional capacities include how long the source has known the individual, how frequently the
source has seen the individual, how consistent the opinion of the source is with other evidence,

---

[12]SSR 06-03p provides that the Commissioner will consider all available evidence in an individual's case
record, including evidence from medical sources. The term "medical sources" refers to both "acceptable medical
sources" and health care providers who are not "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1502 and
§ 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id.*
(citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)). Licensed social workers are not "acceptable medical
sources" and instead fall into the category of "other sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and §
416.913(d)).

how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id*. *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p.

Here, the ALJ appropriately considered Mr. Thomas' opinion as "other source" evidence and found that it was not entitled to significant weight because her findings were not well-explained and not supported by her treatment records. As the ALJ's determination in this regard is supported by substantial evidence, his decision should be affirmed.

For the above reasons, plaintiff's second assignment of error should be overruled.

3. The RFC formulation adequately accommodates plaintiff's physical limitations.

For her third assignment of error, plaintiff asserts the RFC assessed by the ALJ and Appeals Council lacks substantial support because it does not accommodate her supported limitations. (Doc. 7 at 10-11). Plaintiff cites to evidence documenting morbid obesity; knee and low back pain, worse with sitting; back tenderness, crepitus of the knee, and 11 tender points on exam; worsening of symptoms following a car accident; receipt of epidural injections without relief; and sensory deficits on exam. (*Id*. at 10, citing Tr. 2011-14, 2017, 2436-39, 2478). Plaintiff maintains that given the combination of her morbid obesity and joint abnormalities, she is not able to do the prolonged sitting required for sedentary work and that the ALJ and Appeals Council erred under 20 C.F.R. § 404.1523 by failing to consider the combined effect of her impairments and omitting a sit/stand limitation from the RFC formulation. (*Id*. at 11).

The RFC formulated by the ALJ and Appeals Council provides that plaintiff is capable of sitting for six hours and standing for two hours in an eight-hour workday. (Tr. 6). This RFC formulation is substantially supported by the evidence of record and the evidence cited by

25

plaintiff does not demonstrate that she requires an additional sit/stand accommodation.   The
pertinent medical evidence is as follows.

On Plaintiff is considered morbidly obese.   In July 2009, plaintiff's body mass index (BMI)
was recorded at 48.8.   (Tr. 673).   In June 2010, plaintiff's BMI was recorded at 52.96.   (Tr.
761).   In October 2011, plaintiff's BMI was recorded at 50.58.   (Tr. 2437).

On May 23, 2011, plaintiff underwent a preoperative examination with her primary care
physician, Kimberly Seltzer, M.D.   Dr. Seltzer found no arthritis, arthralgia, myalgia, weakness,
or morning stiffness and plaintiff had full and symmetric strength.   Plaintiff was scheduled for a
hysterectomy the following month.   (Tr. 1338-40).

Plaintiff was seen in September 2011 for bilateral knee pain by orthopedic specialist
Stephen Haverkos, M.D.   (Tr. 2457-62).   Plaintiff reported stiffness in her hip, back, elbow, and
wrist, and tightness in her fingers.   (Tr. 2457).   She stated that this stiffness waned after being
up but returned upon sitting.   (Id.).   Plaintiff further reported pain in her knees when sitting and
that she needs to straighten her legs while sitting to be comfortable.   (Id.).   On examination, Dr.
Haverkos found that plaintiff had some internal rotation and walked with a waddling gait; she
was subjectively neurovascularly intact distally; and she had negative log roll and negative
straight leg raising.   (Tr. 2458).   Dr. Haverkos found plaintiff could flex and extend her knee
with some tenderness with manipulation of the kneecap; she was able to walk forward and
backward; and she was able to turn on both legs.   (Tr. 2458-59).   Dr. Haverkos examined x-rays
and found no significant arthritis and/or acute changes.   (Tr. 2459).   Plaintiff was referred to a
rheumatologist.   (Id.).   September 9, 2011 x-rays of plaintiff's knees were normal.   (Tr. 1987).

26

In September 2011, plaintiff was evaluated for joint pain by Sri Koneru, M.D., a rheumatologist. (Tr. 2011-18, 2436-39). Plaintiff reported pain in her knees and ankles with sitting and standing, which was worse in the morning. (Tr. 2014). She also reported chronic back pain since a 2007 car accident. (*Id*.). On examination, Dr. Koneru found no joint swelling in either knee; mild crepitus of the knees; some pain with range of motion in the knees; and good range of motion throughout otherwise. (Tr. 2017). Plaintiff's muscle strength in all extremities was noted as "good" but she had more than 11 tender points of fibromyalgia. (*Id*.). Plaintiff was diagnosed with polyarthralgias and myofascial pain. (Tr. 2018). While plaintiff described symptoms suggestive for inflammatory arthritis, there were no abnormal findings on examination and a very minimal elevation in sedimentation rate. (*Id*.). Dr. Koneru recommended anti-inflammatory medication to help with the joint pain and noted "her obesity is a significant aggravating factor for the joint pain in her lower extremities" and emphasized that plaintiff needed to work on weight loss and exercise. (Tr. 2018). At a follow up examination in October 2011, plaintiff reported ongoing pain in the knees and stated that she cannot walk or stand for longer than 10 minutes at a time. (Tr. 2437-38). Dr. Koneru's examination results were essentially the same as in September 2011. *See* Tr. 2439. Dr. Koneru referred plaintiff to D. Scott Long, M.D., for a rehabilitation consultation.

Dr. Long treated plaintiff on October 27, 2011. (Tr. 2478-85). Plaintiff reported that her chief complaint was pain in her low back and bilateral hips, worsening since July 2011. (Tr. 2478-79). Plaintiff also reported tingling in both legs, but she did not report leg pain, stiffness, or difficulty walking. (Tr. 2479). Examination revealed tenderness of the posterior cervical muscles, tenderness of the right and left trapezius, full range of motion of the back, normal gait,

27

normal and symmetric reflexes, no focal weakness, and normal muscle tone, muscle strength, and

sensation to light touch and pinprick. (Tr. 2480-81, 2484). When seen by Dr. Long in

December 2011, plaintiff reported increased lower limb weakness and numbness. (Tr. 2495).

Dr. Long found normal range of motion and normal gait but plaintiff exhibited tenderness and

pain in her lumbar back. (Tr. 2496). Dr. Long ordered an EMG and nerve conduction study

which showed evidence of a stenotic lesion at S1 with ongoing denervation changes present with

sparing in the lumbar paraspinals. (Tr. 2503-09).

State agency physician Leanne Bertani, M.D. reviewed the record in May 2011 and found

that plaintiff could never climb ladders/rope/scaffolds, and could not work around unprotected

heights or dangerous machinery due to her history of vertigo and seizure activity. (Tr. 75-76).

Linda Hall, M.D., a state agency physician, reviewed the record in October 2011 on

reconsideration and opined that plaintiff could lift, carry, push, and pull up to 50 pounds

occasionally and 25 pounds frequently; sit about six hours in an eight-hour work day; and stand

and/or walk about two hours in an eight-hour work day. (Tr. 95). Dr. Hall based plaintiff's

exertional limitations on polyarthralgias/fibromyalgia, asthma, and a BMI of 47. (Tr. 95). Dr.

Hall found plaintiff could frequently climb ramps/stairs, kneel, crawl and crouch; and she could

never climb ladders/rope/scaffolds. (Tr. 95-96). Dr. Hall opined that plaintiff should avoid

concentrated exposure to extreme cold, heat, and humidity; avoid moderate exposure to fumes,

odors, dusts, gases, poor ventilation, etc.; and avoid all exposure to hazards such as machinery

and heights. (Tr. 96).

Plaintiff's assertion that she has additional limitations in sitting and standing that are not

accommodated by the Appeals Council's RFC formulation is not supported by the evidence of

record. Notably, plaintiff's assertion that she must alternate between sitting and standing is not supported by any clinical or objective evidence but only her own subjective reports. It is plaintiff's burden to provide evidence showing how her impairments affect her functioning during the period of alleged disability. 20 C.F.R. § 404.1512. Plaintiff's allegations, unsupported by any objective evidence, are not sufficient to establish disabling limitations. *See Troth v. Comm'r of Soc. Sec.*, No. 3:11-cv-272, 2012 WL 1185999, at *6 (S.D. Ohio Apr. 9, 2012) (Black, J.) ("where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions") (quoting *Freudenberger v. Astrue*, No. 1:09-cv-745, 2011 WL 1114407 (S.D. Ohio Feb. 28, 2011) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2011 WL 1119569 (S.D. Ohio Mar. 24, 2011) (Spiegel, J.)).

The medical evidence of record simply does not substantiate plaintiff's allegations. No medical source of record opined that plaintiff's physical impairments prohibit the prolonged sitting needed for sedentary work or require her to alternate between sitting and standing. Further, the evidence detailed above demonstrates that plaintiff consistently had good lower extremity flexibility, full strength on examination, and normal objective findings. Both state agency physicians found that plaintiff was capable of performing a sedentary level of sitting and standing and there is no opinion evidence contradicting their conclusions. The ALJ reasonably relied on these opinions to assess the limitations resulting from plaintiff's physical impairments. Plaintiff has not shown that the ALJ or Appeals Council erred by failing to impose an additional sit/stand restriction or greater sitting restrictions in plaintiff's RFC.

Accordingly, plaintiff's third assignment of error should be overruled.

4. The ALJ's finding at Step Five is substantially supported.

Plaintiff's fourth assignment of error alleges the hypothetical question presented to the VE did not account for all of plaintiff's work-related limitations.  *See* Doc. 7 at 11.   Plaintiff specifies that the hypothetical questions did not include: (1) Dr. Lester's finding that plaintiff had "moderate limitations on persistence or pace"; (2) each limitation set forth by Dr. Demuth in his RFC Functional Assessment form; (3) the limitations set forth by Ms. Thomas; and (4) a provision allowing plaintiff to alternate between sitting and standing.   (*Id.*).

Plaintiff's arguments are simply a rehash of her challenges to the ALJ and Appeals Council's RFC determination.   Accordingly, the Court incorporates its rationale stated above and finds that the ALJ and Appeals Council did not err at Step Five of the sequential evaluation process.   The RFC formulated by the Appeals Council is substantially supported by the record and the hypothetical questions posed to the VE incorporated all of plaintiff's supported limitations.[13]  *See Davis v. Sec'y of H.H.S.*, 915 F.2d 186, 188-89 (6th Cir. 1990) (an ALJ's finding of non-disability is substantially supported by evidence where it is based on alternate Step Five determination based on a VE's responses to proper hypothetical questions).

Accordingly, plaintiff's fourth assignment of error should be overruled.

5. The ALJ did not err in assessing plaintiff's credibility.

For her final assignment of error, plaintiff contends the ALJ erred in discounting her credibility.   The ALJ determined that plaintiff's statements regarding the limiting effects of her impairments were not fully credible as follows:

_____

[13]While the ALJ failed to include any mental limitations in the bolded portion of his decision discussing plaintiff's RFC, his hypothetical questions to the VE included the limitations set forth by the Appeals Council.  *See* Tr. 64-65.

30

> First, the medical evidence in the record establishes that [plaintiff]'s [RFC] is within the sedentary exertional range. Second, the clinical examination findings establish that [plaintiff]'s [RFC] is within the sedentary exertional range. Third, [plaintiff]'s activities of daily living are inconsistent with [her] allegations. Fourth, [plaintiff]'s allegations are vague and equivocal. Finally, the opinion evidence in [the] record establish that [plaintiff]'s [RFC] is greater than alleged.

(Tr. 29). The ALJ further explained how he reached each of these conclusions with a detailed discussion of the evidence in comparison to plaintiff's subjective reports. *See* Tr. 30-35.

Plaintiff argues that the ALJ erred in discounting her credibility because: (1) her reported activities of daily living and her ability to care for her mother for a short period of time do not establish that plaintiff can perform full-time work; (2) her allegations of mental health limitations are not "vague and equivocal" but are specifically documented in her mental health treatment records; (3) the ALJ did not appropriately account for the side effects of plaintiff's strong medications; (4) the ALJ failed to note the longitudinal history of her mental health impairments, which establish that she is unable to sustain work or stay employed for more than two years; and (5) the ALJ's credibility determination ignores Dr. Demuth's finding that plaintiff's psychological allegations are credible, despite giving "significant weight" to his medical opinion. (Doc. 7 at 8-9, 12)

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or

31

rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determinations must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

For the following reasons, the undersigned finds the ALJ's credibility determination is supported by substantial evidence. First, it was reasonable for the ALJ to consider plaintiff's reported activities of daily living and her ability to take care of her mother in finding that her statements of disabling limitations were not fully credible. The record demonstrates that plaintiff is able to independently attend to her personal hygiene needs, go shopping, prepare simple meals, take her children to and from school and help with their school work, and perform some household chores such as cleaning the kitchen and bathroom, doing laundry, vacuuming, and washing dishes. (Tr. 252-54, 278-79). The record also shows that plaintiff was able to travel to Georgia to care for her mother who had recently been diagnosed with cancer. (Tr. 2518). Further, although plaintiff testified that she isolates herself because her bipolar disorder

32

causes mood swings and anger outbursts, which previously cost her jobs and preclude her from interacting with others in a work environment (Tr. 50-51, 56-58), the treatment notes from Dr. Campbell and Ms. Thomas indicate that plaintiff was always cooperative and engaged in talk therapy and Dr. Lester noted that plaintiff was pleasant and cooperative at her consultative examination.   The ALJ was entitled to discount plaintiff's credibility based on the inconsistencies between the reports of her subjective limitations and her daily and other activities.   *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (in determining credibility, the ALJ may consider the claimant's testimony of subjective limitations in light of other evidence of the claimant's ability to perform other tasks such as walking for exercise, cooking, vacuuming, and other household and social activities).   *See also Blacha v. Sec'y of H.H.S.*, 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household and social activities in evaluating credibility).

Second, the ALJ's description of plaintiff's reports of her limitations as "vague and equivocal" is substantially supported by the evidence of record.   Plaintiff maintains that her testimony and the medical records are "specific" and document definite diagnoses of PTSD and OCD with concomitant symptomology.   *See* Doc. 7 at 9.   Plaintiff's argument misses the mark. The ALJ explained that plaintiff's testimony and allegations of being unable to sit longer than twenty minutes and having daily mood swings and irritability were "vague and equivocal" because plaintiff was "unable to provide specific, precise or discernable functional limitations" and, thus, the credibility of her broad assertion of being incapable of performing work was diminished.   (Tr. 33).   The ALJ supported his statement by citing to evidence contradicting plaintiff's reports, such as his observation that plaintiff "was able to remain seated without any

visible or reported distress throughout the hearing, which lasted over thirty minutes" and the fact

that no examining or treating medical source described plaintiff as aggressive, hostile, or

uncooperative.  (*Id.*).  The ALJ reasonably determined that plaintiff's subjective reports were

vague and equivocal for lack of support in the record.

Third, plaintiff's argument that the ALJ erred under 20 C.F.R. § 404.1529[14] by not noting

the side effects of her medication in assessing her credibility (Doc. 7 at 12) is not well-taken.

The ALJ's decision explicitly cites plaintiff's testimony that she takes psychotropic medications

that cause drowsiness as a side effect.  *See* Tr. 29.  In addition, plaintiff has not identified any

medical evidence that substantiates her claim of work preclusive side effects from her medication

and the clinical evidence does not support this allegation.   While there are notations in the

clinical treatment records from Dr. Campbell regarding plaintiff's complaints that Citalopram

and Abilify worsened her mood (Tr. 1200), this does not establish that plaintiff is incapable of

performing a limited range of sedentary work as a result. Given the dearth of evidence showing

that plaintiff's functional abilities are adversely impacted by her medications to the extent she

alleges, the undersigned finds that the ALJ's credibility assessment adequately complies with the

dictates of 20 C.F.R. § 404.1529.

Lastly, plaintiff argues the ALJ "erred in failing to note the longitudinal history of [her]

nervous problem, resulting in the inability to sustain work and to stay on one job over two years.

. . ."  (Doc. 7 at 12).   Plaintiff's assertion is belied by a review of the ALJ's decision.   The ALJ

explicitly discussed plaintiff "longitudinal history of mental impairments" in detailing the mental

health medical evidence of record.   (Tr. 30-31, 32, 35).   Thus, the ALJ did not err by failing to

---

[14]20 C.F.R. § 404.1529 lays out the factors an ALJ will consider in assessing a claimant's symptoms, which include "[t]he type, dosage, effectiveness, and side effects of any medication. . . ."  20 C.F.R. § 404.1529(c)(3)(iv).

discuss plaintiff's longitudinal history of mental health impairments – he simply determined that the evidence did not substantiate her allegations that these impairments caused work preclusive functional limitations. The ALJ's finding was reasonable and substantially supported by the medical evidence.

For the above reasons, plaintiff's challenges to the ALJ's credibility assessment are not well-taken and her fifth assignment of error should be overruled.

## III. Conclusion

For the reasons stated above, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: ___8/11/15___

Karen L. Litkovitz
United States Magistrate Judge

35

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AMANDA ABEL,
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:14-cv-699
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).